UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| ALAINNE GOTCH | CIVIL ACTION NO. 11-CV-1258 |
| VERSUS | |
| MICHAEL W. NEUSTROM | MAGISTRATE JUDGE HANNA |

MEMORANDUM RULING

This case comes before the court by consent of th eparties pursuant to 28 U.S.C. § 636.  Jurisdiction is based on 28 U.S.C. § 1331.  Pending before the court is Defendant's Motion for Summary Judgment, filed December 18, 2012. [Rec. Doc. 29] The motion is opposed in part by the plaintiff. [Rec. Doc. 33]    For the reasons set out below, the motion is GRANTED.

By this lawsuit, Plaintiff Alainne Gotch seeks to recover compensatory and punitive damages, attorney fees, legal interest and costs due to alleged unlawful discrimination by her former employer Sheriff Michael W. Neustrom.  She alleges she was employed from May, 2009 through August 6, 2010, when she was terminated from her position as a part-time clerk in the Community Corrections Department of the Sheriff's Office. [Rec. Doc. 1, p. 1] Gotch contends she was subjected to gender-based discrimination proscribed by Title VII and the Pregnancy Discrimination Act at 42 USC

§2000e, along with similar provisions of Louisiana statutory law.[1]  She alleges she was discriminated against on the basis of her pregnancy when she was separated from her employment after a period of absenteeism.  She also alleges that the defendant failed to re-hire her when she re-applied for her position after she was cleared by her physician for a return to work.  The only named defendant is Plaintiff's former employer Michael W. Neustrom, as Sheriff of Lafayette Parish. [Rec. Doc. 1, p. 3]

*Undisputed Material Facts:*

Alainne Gotch began work with LPSO on May 4, 2009 as a part-time clerk for the Day Reporting Program, an alternative sentencing program operated by the LPSO.  Her direct supervisor was Bridget Chaisson, the program coordinator.  Ms. Chaisson reported to Pam Justice, the manager of the Community Corrections Department.  [Rec. Doc. 29, Ex. A] The program uses a telephone monitoring system to track criminal offender participants through a messaging system, whereby participating offenders are required to call into the system 4-6 times a day.  Approximately 60-80 offenders participate in the Day Reporting Program; the messaging system receives about 300 telephone calls per day.  [Rec. Doc. 29, Ex. A]  Plaintiff's job as a Day Reporting Program Clerk was to monitor, verify and log those calls. Noncompliance by an offender participant raises a public safety concern and could result in the issuance of a warrant for his/her arrest and

---

[1]Louisiana's Employment Discrimination Law(LEDL) prohibits discrimination based on pregnancy, childbirth, or related medical conditions.  La. R.S. 23:301 et seq. [23:341-42]

3

incarceration. Plaintiff was charged to promptly report any offender compliance failures. [Rec. Doc. 29, Ex. A, Ex. B, pp. 55-57]

Gotch was one of two part-time clerks who worked opposite schedules.  When she was absent, other employees of the Day Reporting Program, who had other responsibilities, had to perform her duties.  As a part-time employee, Gotch had no vacation or sick leave allowance.  She was allowed to work up to thirty (30) hours per week; twenty (20) hours per week was needed for the adequate performance of the duties of a part-time Day Reporting Clerk. [Rec. Doc. 29, Ex. A] Beginning June 9, 2010, Plaintiff began missing work frequently. From June 25, 2010 through August 4, 2010, she worked a total of 9.75 hours.  During that period, at the request of her employer, she obtained and submitted multiple doctor's excuses from work "secondary to complications from pregnancy" for some, but not all of her absences.  At no time did Plaintiff apply for preapproval of any extended period of leave per LPSO policy.

By August 4, 2010, Plaintiff had not returned to work as her doctor's previous note had indicated, and she submitted another note indicating that she would be "UNABLE" to return to work for at least 2-4 more weeks. With this information, combined with the plaintiff's history of absenteeism, although excused/explained by her doctor, the employer determined that the continued, indefinite absence could no longer be tolerated.  A termination letter was issued to the plaintiff on August 6, 2010, indicating that she was being terminated because she was "unable to return to part time employment at your

4

regular assigned position." Specifically, the letter stated: "When your physical condition improves and you can be released to your regular assignment, you will be eligible to re-apply with this Office." [Rec. Doc. 29, Ex. K]

Plaintiff asserts in the Complaint that she acted to re-apply for employment in November, 2010, but she did not receive a response to her application. Defendant asserts that it has no record that Gotch made re-application. According to Gotch, her re-application was made on-line. She concedes that she made no other contact with her former employer in the effort to return to work.

The online employment application process is described in detail on the Sheriff's website, and a copy of the instructions was offered into evidence without objection at oral argument. [Rec. Doc. 29, Ex. P] The instructions reference the responsibility charged to the applicant to schedule pre-employment testing, completion of which is required to establish qualification for the vacant position. There is no evidence that the plaintiff contacted anyone or in any way attempted to complete the testing portion of the application process.

**Positions of the Parties:**

The plaintiff has asserted that had she not been pregnant, she would have been permitted to keep her job, allowing her to return to work within the delays authorized by her doctor on August 4, 2010. She urges that she would have been given an interview and serious consideration for re-employment for which she was "probably the most

qualified candidate," had she not been pregnant. She further asserts that other LPSO employees with medical conditions causing temporary absences from work were allowed to keep their jobs and to return to such jobs upon their being physically able to do so. The only difference, per Gotch, was her pregnancy and the complications therefrom. [Rec. Doc. 1, p. 6] In response to the defendant's Motion for Summary Judgment, and in oral argument, Plaintiff has conceded that she cannot meet her burden to prove wrongful termination based on pregnancy. [Rec. Doc. 33] She urges, however, that the defendant's failure to rehire her in November, 2010, despite her on-line application, constitutes pregnancy discrimination, since she was still pregnant at the time of her reapplication.

The defendant asserts that Plaintiff cannot carry her burden to establish that she was a victim of pregnancy discrimination in her employment. Defendant argues that Gotch was terminated because she was unable to come to work in her position which was considered essential by her employer. Defendant also argues that Plaintiff has not/cannot prove that other similarly-situated, non-pregnant employees were more favorably treated. The defendant asserts that Gotch never made re-application for employment, and even assuming that she made the referenced on-line application, she failed to complete the re-application process when she did not schedule and complete the required testing. Failing that, says Defendant, the plaintiff cannot establish that she was qualified for the position.

## ANALYSIS

**The Summary Judgment Standard**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable substantive law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Minter v. Great American Ins. Co. of New York*, 423 F.3d 460, 465 (5th Cir. 2005). A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact. *Id.* All facts and justifiable inferences are construed in the

7

light most favorable to the nonmovant. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), *citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008), *citing Celotex Corp. v. Catrett*, 477 U.S. at 325. The motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 197(5th Cir. 2005).

***Pregnancy Discrimination***:

Title VII of the Civil Rights Act of 1964 (" Title VII" ) prohibits an employer from "discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's ... sex". 42 U.S.C. § 2000e–2(a)(1). The Pregnancy Discrimination Act of 1978 (" PDA" ), 42 U.S.C. § 2000e(k), amended Title VII by explicitly including discrimination based on pregnancy and related medical conditions within the definition of sex discrimination. *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 859 (5th Cir.2002). A claim under the PDA is analyzed

8

like Title VII discrimination claims in general. *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir.1998). First, the plaintiff must establish a *prima facie* case of discrimination by showing: (1) she was a member of a protected class, (2) she was qualified for the position she lost; (3) she suffered an adverse employment action, and (4) that others similarly situated outside of the protected class were more favorably treated. *Id., citing, McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once established, the defendant bears the burden of producing evidence that its employment decision was based on a legitimate, nondiscriminatory reason. The burden then shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination. Once the defendant articulates a legitimate, nondiscriminatory reason for the employment action, however, the scheme of shifting burdens and presumptions "simply drops out of the picture," and "the trier of fact proceeds to decide the ultimate question: whether plaintiff has proved that the defendant intentionally discriminated against [her] because of [her sex]" *Id., quoting, St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (internal citation and quotation omitted).

As several courts have recognized, "an essential element of any ... job is an ability to appear for work...." *Rogers v. Int'l Machine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir.1996), *citing, e.g., Tyndall v. Nat'l Educ. Centers, Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir.1994) (an employee "who does not come to work cannot perform any of his job

9

functions, essential or otherwise."). The fact that an employee's absences may have been caused by pregnancy does not dispense with the general requirement that employees must show up for work. Indeed, it is well-established that a pregnant employee is only entitled to be treated as well as other non-pregnant employees, not better. Fifth Circuit jurisprudence provides that, under the PDA, an employer is obliged to ignore a woman's pregnancy and to treat the employee as well as it would have if she were not pregnant. *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 859 (5th Cir. 2002). The PDA does not, however, impose an affirmative obligation on employers to grant preferential treatment to pregnant women, and the PDA does not require employers to treat pregnancy related absences more leniently than other absences. *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 208 (5th Cir. 1998). Consequently, in order for Plaintiff to ultimately prove unlawful pregnancy discrimination, she must demonstrate that "the misconduct for which she was discharged was nearly identical to that engaged in by an employee not within her protected class whom the company retained." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir.2001). The plaintiff has conceded, and this court finds that she cannot make out the requisite *prima facie* case of pregnancy discrimination relative to her wrongful termination claim.

     As to Plaintiff's second claim, that she was not re-hired for her former position when she made re-application, the same burden of proof falls to the plaintiff. In considering that argument, for the purpose of this dispositive motion, the court will accept

10

that Ms. Gotch completed the Sheriff's on-line application form as she says she did in November, 2010 and that she had no other contact of whatsoever kind with her former employer regarding a return to employment, as she has testified. The requirement to contact the employer to schedule the testing is clear and unequivocal in the on-line instructions provided with the job advertisement. Simply put, since the plaintiff did not complete the qualifying process, the employer had no way to know that she was still interested in the position and had no affirmative obligation to seek her out. Absent completion of the qualifying process, the employer has articulated a legitimate non-discriminatory reason not to re-hire her and the plaintiff has offered no evidence that its decision was a pretext. On those facts, the court must conclude that the plaintiff cannot establish a *prima facie* case of pregnancy discrimination in the context of her second claim.

### *State Law Claims:*

Louisiana's Employment Discrimination Law(LEDL) prohibits discrimination based on pregnancy, childbirth, or related medical conditions. La. R.S. 23:301 et seq. [23:341-42] Louisiana courts look to federal jurisprudence interpreting Title VII of the Civil Rights Act of 1964 §§701-705, as amended, 42 U.S.C. §§2000e-2000e-4, to interpret the LEDL because it contains similar prohibitions against discrimination. *King v. Phelps Dunbar, LLP*, 743 So.2d 181(La. 1999); *Brooks v. Popeye's Inc.*, 101 So.3d

59(La. App. 3d Cir. 2012). On that basis, and for the reasons articulated above, the plaintiff's state law discrimination claims must fail as well.

### *Conclusion*

Based on the foregoing, this Court finds that Plaintiff has not presented a prima facie case of pregnancy discrimination under applicable federal or state law. The Court also finds that the defendant has articulated legitimate, non-discriminatory reasons for its employment actions, without evidence from the plaintiff to suggest pretext. On these findings, since the non-moving party cannot produce evidence to support an essential element of her claim, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.

Signed at Lafayette, Louisiana on January 25, 2013.

_____
Patrick J. Hanna
United States Magistrate Judge